**ENVIROPOWER, L.L.C., Appellant,**

v.

**BEAR, STEARNS & CO., INC., Appellee.**

No. 01–04–01111–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 21, 2008.

Kevin D. Jewell, Chamberlain, Hrdlicka, White, William & Martin, Houston, TX, for Appellant.

John C. Allen, John C. Allen, P.C., Houston, TX, for Appellee.

Panel consisted of Justices TAFT, KEYES, and HANKS.

EVELYN V. KEYES, Justice.

We vacate the trial court's order that set EnviroPower's supersedeas bond at $200,000 and **ORDER** the trial court to conduct a hearing to determine the appropriate amount of a bond or alternate security, if any, under current conditions in accordance with this Court's opinion.[1] *See* Tex.R.App. P. 24.3, 24.4(d).

En banc consideration was requested. Tex.R.App. P. 49.7.

A majority of the justices of the Court voted in favor of reconsidering the case en banc. *See id.*

The en banc Court on reconsideration consists of Chief Justice RADACK and

---

1. We have detailed the reasons for this order in an en banc opinion. *See EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.,* 01–04– 01111–CV, 265 S.W.3d 1, 2008 WL 483666 (Tex.App.–Houston [1st Dist.] 2008, no pet. h.).

Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND.

Justice KEYES, writing for the majority of the en banc Court, joined by Chief Justice RADACK and Justices JENNINGS, ALCALA, HIGLEY, and BLAND.

Justice BLAND, joined by Justice JENNINGS, specially concurring with the opinion of the en banc Court. *See id.*

Justice HANKS, joined by Justices TAFT and NUCHIA, dissenting from the order and opinion of the en banc Court.

## OPINION ON EN BANC ORDER[1]

After our May 10, 2007 opinion issued, EnviroPower filed a "Motion for Rehearing En Banc" regarding the definition of EnviroPower's net worth. *See* TEX.R.APP. P. 49.7. A majority of the Court granted en banc reconsideration solely on this issue and issues the following opinion.

In this action to enforce a New York judgment, we review EnviroPower, L.L.C.'s ("EnviroPower") motion challenging the trial court's order that set the supersedeas bond in the amount of $200,000. *See* TEX.R.APP. P. 24.4(a)(1).

We vacate the order of the trial court with respect to the supersedeas bond and remand for taking of evidence as to EnviroPower's current net worth and consideration of the necessity of other orders necessary to protect the judgment creditor against loss or damage that the appeal might cause.

**Bond Amount**

EnviroPower argues that the trial court erred in setting the supersedeas bond amount at $200,000. Specifically, EnviroPower contends that it was entitled to a stay of enforcement of the Texas trial court's judgment against it without being required to file a supersedeas bond.[2]

### *Standard of Review*

We review the trial court's rulings concerning the amount and type of bond required and the sufficiency of the sureties under an abuse of discretion standard. TEX.R.APP. P. 24.4; *see also Miller v. Kennedy & Minshew, Prof'l Corp.*, 80 S.W.3d 161, 165 (Tex.App.–Fort Worth 2002, no pet.). The test for whether a trial court abused its discretion is whether the trial court acted arbitrarily or unreasonably in light of all the circumstances of the case. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex.1995); *Lewis v. Western Waste Indus.*, 950 S.W.2d 407, 410 (Tex.App.–Houston [1st Dist.] 1997, no writ).

### *Governing Law*

Section 52.006 of the Texas Civil Practices and Remedies Code, governing the setting of supersedeas bonds, provides in relevant part:

(a) Subject to subsection (b), when a judgment is for money, the amount of security must equal the sum of:

(1) the amount of compensatory damages awarded in the judgment;

(2) interest for the estimated duration of the appeal; and

(3) costs awarded for the judgment.

---

**1.** *See EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.*, No. 01–04–01111–CV, 265 S.W.3d 16, 2008 WL 456491 (Tex.App.–Houston [1st Dist.] Feb. 21, 2008, no pet. h.) (Order).

**2.** The factual background can be found in the opinion on the merits of the appeal of the trial

court's judgment, issued herewith. *See EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.*, No. 01–04–01111–CV, 265 S.W.3d 1, 2008 WL 483666 (Tex.App.–Houston [1st Dist.] Feb. 21, 2008, no pet. h.).

(b) Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of:

(1) 50 percent of the judgment debtor's *net worth;* or

(2) $25 million.

TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(a), (b) (Vernon Supp.2007) (emphasis added). The statute further provides:

(d) An appellate court may review the amount of security as allowed under Rule 24, Texas Rules of Appellate Procedure, except that when a judgment is for money, the appellate court may not modify the amount of security to exceed the amount allowed under this section.

*Id.* § 52.006(d).

Texas Rule of Appellate Procedure 24.1, in turn, provides that a judgment debtor in a civil case may suspend enforcement of the judgment pending appeal by, *inter alia,* "filing with the trial court clerk a good and sufficient bond." TEX.R.APP. P. 24.1(a)(2). A bond must be in the amount required by Rule 24.2. TEX.R.APP. P. 24.1(b)(A). Rule 24.2 provides, in relevant part:

When the judgment is for money, the amount of the bond, deposit, or security must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. But the amount must not exceed the lesser of:

(A) 50 percent of the judgment debtor's *current net worth;* or

(B) 25 million dollars.

TEX.R.APP. P. 24.2(a)(1) (emphasis added).

Rule 24.2 further states that a judgment debtor which provides a bond under subsection 24.2(a)(1)(A) in an amount based on its net worth must simultaneously file an affidavit of net worth that states "complete, detailed information concerning the debtor's assets and liabilities from which net worth can be ascertained." TEX.R.APP. P. 24.2(c)(1). The affidavit is prima facie evidence of the judgment debtor's net worth. TEX.R.APP. P. 24.2(c)(1). The judgment debtor has the burden of proving its net worth. TEX.R.APP. P. 24.2(c)(3). Should the debtor's net worth be contested, the creditor may conduct reasonable discovery, following which the trial court must hear the contest and issue an order that states the debtor's net worth and states with particularity the factual basis for that determination. TEX.R.APP. P. 24.2(c)(2),(3). If circumstances change, the trial court has continuing jurisdiction to modify the amount or type of security required to continue the suspension of a judgment's execution. TEX.R.APP. P. 24.3(a).

### *Relevant Facts*

EnviroPower is a two-person limited liability company formed for the development of coal-fired power plant sites. Due to lack of funding and possible bankruptcy, it closed its corporate offices in Lexington, Kentucky in January 2003 and moved into office space at El Paso LGP Company, its original lender and the possessor of a first lien on all of its assets and stock. In 2004, following domestication in Texas of a New York money judgment for $1.6 million against it by Bear Stearns & Co., Inc., ("Bear Stearns") EnviroPower sought relief from having to file a supersedeas bond to prevent enforcement of the judgment pending appeal. It filed an affidavit in the trial court establishing its negative current net worth as $12,000,000 and attached supporting documentation. It also presented evidence at the bond hearing that it had been denied a bond by every surety it had

contacted and that it had recently been denied a $10,000 letter of credit.

Bear Stearns, the judgment creditor, filed a comprehensive "Response to EnviroPower, L.L.C.'s Motion to Vacate Foreign Judgment, Motion for New Trial, and Motion to Stay Enforcement of Judgment" two days before the bond hearing. In that motion, it contested EnviroPower's affidavit of net worth on the ground that "the standard is to look at not only assets minus liabilities but projected revenues as well." Bear Stearns argued that the fixed asset schedule identifying EnviroPower's assets and their disposition, which EnviroPower had produced to it, did not represent EnviroPower's true net worth, which could be determined only from "the correspondence, the e-mails, [and] the documents that reflect there are ongoing negotiations with third parties" for the sale of EnviroPower. Because EnviroPower had refused to produce these documents, Bear Stearns argued that it had failed to carry its burden of proving its true net worth for supersedeas bond purposes.

At the bond hearing, Bear Stearns argued that the trial court should base its determination of EnviroPower's net worth for supersedeas bond purposes on its market value as determined by the $10,000,000 price a third party, Khanjee Holdings LLC, had agreed to pay for 100% of EnviroPower's stock pursuant to a contingent purchase agreement and a separate development agreement. EnviroPower argued that its affidavit set out its net worth in terms of its total current assets minus its liabilities, namely negative $12,000,000, and that consummation of the sale of the company to Khanjee was contingent on the occurrence of a number of milestones that had not occurred.[3] For example, the contingent purchase agreement required EnviroPower to execute long-term agreements with power customers, binding long-term fuel supply contracts, and binding contracts with construction contractors. EnviroPower averred that but for the potential future stock sale to Khanjee, it already would have filed for bankruptcy.

The trial court's order setting EnviroPower's supersedeas bond at $200,000 made the following relevant findings:

3. Net Worth has not been defined in the supersedeas bond statute.

4. *One definition of Net Worth is assets minus liabilities.*

5. Market Value means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

6. The evidence adduced at the hearing does not reflect the fair value of the primary assets for the Judgment Debtor, which are the federal air permits.

7. *Judgment Debtor's assets minus liabilities is negative $12,000,000.00.*

8. A buyer stands willing to purchase Judgment Debtor for $10,000,000.00.

9. The evidence adduced at the hearing establishes that business valuation experts do not rely exclusively on assets minus liabilities in determining the value of businesses.

10. *Judgment Debtor's current net worth for purposes of setting a supersedeas bond is $8,000,000.00.*

11. Judgment Debtor is likely to suffer substantial economic harm if required to post security in the full amount required by the supersedeas statute.

---

**3.** The sale has still not been consummated.

12. The Court determines that a supersedeas bond in the amount of $200,000 will not cause Judgment Debtor substantial economic harm.

(Emphasis added.) In short, the trial court implicitly agreed with Bear Stearns that the appropriate measure for determining a supersedeas bond was not EnviroPower's net worth, as determined by subtracting its assets from its liabilities, which the trial court found to be negative $12,000,000, but rather EnviroPower's "market value," as determined at the hearing, including projected revenues under the contingent purchase agreement and the undetermined value of EnviroPower's federal air permits.

We hold that the correct measure of a company's net worth for the purpose of setting a supersedeas bond under section 52.006 of the Texas Civil Practice and Remedies Code and Rule 24 of the Texas Rules of Appellate Procedure is the company's current assets minus current liabilities at the time the bond is set.

### Discussion

Rule 24.2(a)(1) states that the amount of a supersedeas bond is capped at the lesser of "50 percent of the judgment debtor's *current net worth*; or ... 25 million dollars." TEX.R.APP. P. 24.2(a)(1) (emphasis added). The trial court found that "one definition of Net Worth is assets minus liabilities." In accordance with this definition, it found EnviroPower's net worth to be "negative $12,000,000," a value that would relieve EnviroPower of having to post a supersedeas bond. Yet it rejected

this definition of net worth for supersedeas bond purposes and found EnviroPower's "current net worth for purposes of setting a supersedeas bond [to be] $8,000,000."

Rule 24.2(c)(3) requires that, after hearing a contest to an affidavit of net worth, "[t]he trial court must issue an order that states the debtor's net worth and *states with particularity the factual basis for that determination.*" TEX.R.APP. P. 24.2(a)(c)(3) (emphasis added). Yet the trial court did not state with particularity the factual basis for its determination that EnviroPower's net worth for supersedeas bond purposes was $8,000,000—which was $20,000,000 *greater* than the negative $12,000,000 net worth the trial court accepted as accurately setting out EnviroPower's assets minus its liabilities. Nor did the trial court state with particularity any basis for its finding number 11 that setting bond at $8,000,000 would cause EnviroPower to "suffer substantial economic harm" or for its finding number 12 that "a supersedeas bond in the amount of $200,000 will not cause Judgment Debtor substantial economic harm."[4] We conclude that the trial court erred.

This Court, as well as the Dallas Court of Appeals and our sister court in Houston, has defined "net worth" for purposes of setting a supersedeas bond as "the difference between total assets and total liabilities as determined by generally accepted accounting principles." *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 482 (Tex.App.–Houston [1st Dist.] 2007, pet. denied), quoting *G.M. Houser, Inc. v.*

---

4. In factual support of its conclusion that EnviroPower's current net worth for supersedeas bond purposes was $8,000,000, the trial court made only two findings. First, it stated that EnviroPower's "primary assets" were its federal air permits—something not mentioned before the hearing—without stating how it made that determination or how it valued those assets or what their total value was. It also found that "[a] buyer stands willing to purchase Judgment Debtor for $10,000,000." But it did not state how the fact that a buyer stood willing to purchase EnviroPower for $10,000,000 altered EnviroPower's current negative net worth of $12,000,000. Nor did it state any accounting principles upon which it could make such a finding.

*Rodgers,* 204 S.W.3d 836, 840 (Tex.App.–Dallas 2006, no pet.); *accord Ramco Oil & Gas, Ltd. v. Anglo Dutch (TENGE),* 171 S.W.3d 905, 915 (Tex.App.–Houston [14th Dist.] 2005, no pet.). Likewise, each of our sister courts of appeals that has previously construed the term "current net worth" for purposes of reducing a supersedeas bond under section 52.006 of the Civil Practice and Remedies Code and Rule of Appellate Procedure 24.2 has determined that "net worth is calculated by total assets minus total liabilities as determined by generally accepted accounting principles," or GAAP. *G.M. Houser,* 204 S.W.3d at 840; *Ramco Oil & Gas,* 171 S.W.3d at 915. The Fourteenth Court of Appeals has explained the reason for this construction of the term "net worth" for purposes of reducing a supersedeas bond under section 52.006 and Rule 24.2:

> In amending section 52.006, the Legislature struck a new balance between a judgment creditor's interest in protecting its judgment pending appeal and a judgment debtor's interest in having the ability to challenge the adverse judgment on appeal. . . .
>
> The thrust of the inquiry under section 52.006(c) is whether the judgment debtor has the ability to meet the supersedeas requirement as determined in 52.006(a) or (b) and whether doing so is likely to result in substantial economic harm. *See* TEX. CIV. PRAC. & REM.CODE ANN. 52.006. In conducting this analysis, the trial court has the flexibility to take into account a number of factors

that could affect the judgment debtor's ability to post bond or other security based on the facts and circumstances specific to the case. This inquiry, however, should not focus on the market capitalization of the company or its value as a whole but on the judgment debtor's actual ability to post the security required.

*Ramco Oil & Gas,* 171 S.W.3d at 917. We agree. To hold otherwise would be to require the forced sale of the judgment debtor company, in order to capture the funds sufficient to post the bond, thus defeating the Legislature's purpose in enacting Chapter 52.[5]

The dissenting opinion on en banc order falls into the trap that the Legislature intended to preclude by amending section 52.006, as discussed in *Ramco. See* 171 S.W.3d at 917. In short, it would require the trial court to hold a hearing to determine the value of the judgment's debtor's assets *upon their sale* and to use the "fair market value" of those assets, thus determined, to set the supersedeas bond, thereby thwarting the purpose of the Legislature in amending section 52.006. In its brief, EnviroPower explained the arbitrariness of using such a fair market value standard to determine a judgment debtor's net worth for supersedeas bond purposes by reference to its own case:

> In 2000, EnviroPower applied for and received two federal air permits, which are required to construct coal-fired power plants. The development cost related to the air permits is reflected on

---

**5.** *See Ramco Oil & Gas Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 916 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (quoting Elaine Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal After House Bill 4,* 46 S. TEX. L.REV. 1035, 1093 (2005)), stating:

> The recent legislative modifications to supersedeas requirements effective as to cases

in which a final judgment is signed on or after September 1, 2003, reflect a shift in concern from that of protecting the judgment creditor's ability to collect the judgment if affirmed on appeal, to protecting the judgment debtor from substantial economic harm by appellate security requirements that may effectively preclude the ability to seek appellate review.

the balance sheet, and Ms. Dawson testified regarding the permits at the hearing. These are intangible assets, with a limited life, and are not transferable or assignable. The permits would have already expired this year but for the initiation of minor construction at the sites. The permits have value only to someone who has the financial ability to develop the projects, and each plant costs about $700 million.

Importantly, the value of EnviroPower's air permits as reflected on its financial statements was *not* controverted at the hearing. Indeed, when asked whether any dispute existed with respect to EnviroPower's net worth represented in its financial statements, Bear Stearns' witness conceded he did not dispute EnviroPower's current book value and had "no reason to believe the books and records weren't kept accurately." He also agreed that any value represented by the air permits wouldn't become tangible until exchange of the funds in consideration of the stock sale. In light of the undisputed evidence presented by EnviroPower, the trial court has no sufficient evidentiary basis to find that the fair value of the air permits is not reflected on the financial statements.

We agree with EnviroPower.

We hold, in accordance with the foregoing law, that the trial court abused its discretion by failing to set EnviroPower's supersedeas bond in accordance with its finding number 7 that EnviroPower's current net worth as measured by its total current assets minus its total current liabilities was negative $12,000,000. *See* TEX. R.APP. P. 24.4(a)(5) (trial court's rulings concerning amount of bond are reviewed under abuse of discretion standard).

## Conclusion

We vacate trial court's order that set EnviroPower's supersedeas bond at $200,000 and remand to the trial court to determine the appropriate amount of a bond or alternate security, if any, under current conditions in accordance with this opinion. *See* TEX.R.APP. P. 24.3, 24.4(d).

## CONCURRING OPINION ON EN BANC ORDER

JANE BLAND, Justice.

The trial court found that the net worth of EnviroPower, L.L.C. ("EnviroPower"), the debtor company, is a negative $12 million dollars, if calculated by subtracting liabilities from assets. EnviroPower is operating solely because its first lien secured creditor provides it with an operating allowance, and to date, appears to have forborne calling in the debt it holds. The trial court also found that EnviroPower's "net worth for purposes of setting a supersedeas bond" is a positive $8 million, based on a third party's offer to purchase the company. It is the potential gain from this sale upon which the trial court required a $200,000 supersedeas bond. Determining the market value of particular assets, however, is one thing; the market value of a company as a whole is another. The former would place the value of an asset on the books at its current worth rather than at its book value (or cost basis), in instances in which accounting principles allow for it. The latter is a hoped-for gain (or an unhoped-for loss) should the company be sold, or a capitalization above or below the company's book value, based upon expectations about potential *future* earnings. *See Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge), L.L.C.,* 171 S.W.3d 905, 914 (Tex.App.–Houston [14th Dist.] 2005, no pet.). Such gains generally are not recognized under accounting principles unless or until they are realized.

The market value finding in this case is based on the latter concept.

As our sister court observed in *Ramco,* for purposes of statutory interpretation, courts traditionally define net worth to mean assets less liabilities under basic accounting principles. *See id.* at 913–14 (collecting cases interpreting statutes that contain net worth as a term defined as assets less liabilities under generally accepted accounting principles); *see also* Tex.R.App. P. 24.2(c)(1) ("A judgment debtor who provides a bond, deposit, or security under (a)(1)(a) in an amount based on the debtor's net worth must simultaneously file an affidavit that states the debtor's net worth and states complete, detailed information concerning the debtor's assets and liabilities from which net worth can be ascertained."). Such an interpretation could leave room for differences of opinion as to the current market value of particular assets, but not the more ethereal (at least when trying to borrow against it to post a bond) unrealized gain that potentially could be had if the judgment debtor company was sold in the future, and the unrealized gain distributed among its assets to increase their value beyond their capitalized cost basis, without any notion that a market exists for those assets separate from a sale of the company that has yet to occur.

Of course, should a gain from the sale of the company *be* realized, an appropriate bond must be posted. And, since a potential gain in this case is more than speculative, the trial court is within its authority to require that the company escrow an amount sufficient to post a bond upon the completion of the sale, if the completed sale results in the company moving from the red to the black in terms of assets minus liabilities. *See* Tex.R.App. P. 24.1(e) ("The trial court may make any order nec-essary to adequately protect the judgment creditor against loss or damage that the appeal might cause."). But "market value" based upon the unrealized gain from a proposed sale of the company does not equal current net worth for the purposes of setting a supersedeas bond under the Texas Civil Practice and Remedies Code and Texas Rule of Appellate Procedure 24. *See Ramco Oil & Gas, Ltd.,* 171 S.W.3d at 914 ("By using market capitalization as the standard for determining Ramco Energy's net worth, the trial court applied an incorrect legal standard and erred as a matter of law.").

The dissent correctly observes that this case and our court's decision in *LMC v. Burke* are not wholly incompatible because no party in the *LMC* case asserted that the trial court should set a supersedeas bond based on an overall market value that was unreflected by the company's book value. *LMC Complete Automotive v. Burke,* 229 S.W.3d 469, 485–86 (Tex.App.–Houston [1st Dist.] 2007, pet. denied). The dissenting view in this case cannot be squared, however, with our sister court's well-reasoned decision in *Ramco,* in which the court noted the distinction between valuing a company based on its net worth and valuing one based on its market capitalization, or market value, and held that net worth, for purposes of setting a bond, is assets less liabilities. *See Ramco Oil & Gas, Ltd.,* 171 S.W.3d at 913–14. Because disputes about the determination of net worth arise with regularity in the jurisdictions encompassed by our two courts, the litigants and trial courts are entitled to some uniformity in our decisions on the setting of appeal bonds. I therefore join the en banc opinion and order.

## DISSENTING FROM OPINION
## ON EN BANC ORDER [1]

GEORGE C. HANKS, JR., Justice.

In this action to enforce a New York judgment, EnviroPower, L.L.C. complains

of the trial court's orders denying its motion for new trial, motion to vacate, and motion to stay enforcement of the judgment. I respectfully dissent from the en banc majority's conclusion that the trial court erred in finding that EnviroPower had a positive net worth and setting the bond amount at $200,000.

The parties do not dispute the definition of "net worth" for purposes of calculating the amount of a supersedeas bond: Net worth is generally measured as assets minus liabilities. Rather, the key issue in dispute here is *what value should the trial court have placed on EnviroPower's assets, which are used to calculate net worth.* Specifically, the issue is whether the trial court was required to accept the historic cost or book value of EnviroPower's permits as the value to be used in calculating net worth or whether it could consider evidence of the fair market value of these permits. I believe that the trial court did not abuse its discretion in considering evidence regarding the fair market value of the permits in finding that EnviroPower has a positive net worth and in setting the bond amount. Accordingly, I would affirm.

## Background

Bear, Stearns & Co., Inc. sued EnviroPower in New York state court for breach of contract and quantum meruit alleging that EnviroPower failed to pay Bear, Stearns for services performed and expenses incurred. The New York court, sua sponte, found that, during discovery, EnviroPower intentionally withheld documents, and it struck EnviroPower's answer. After an evidentiary hearing, the New York court entered a total judgment for Bear, Stearns in the amount of $1,309,880, which included the appropriate interest, costs, and disbursements.

Bear, Stearns domesticated its foreign judgment in the 164th District Court of Harris County, Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.003, 35.004, 35.005 (Vernon 1997). EnviroPower filed a Motion to Vacate Foreign Judgment, Motion for New Trial, and Motion to Stay Enforcement of Judgment in Response to "Judgment Creditor's Action for Enforcement of Foreign Judgment." After an evidentiary hearing and additional briefing regarding the definition of "net worth," the trial court denied the motions and ordered EnviroPower to provide Bear, Stearns security in the amount of $200,000 in connection with the underlying New York judgment.

## Bond Amount

EnviroPower argues that the trial court erred in refusing to stay enforcement of the New York judgment[2] and in setting the bond amount at $200,000. Specifically, EnviroPower contends that it was entitled to a stay without being required to file a supersedeas bond.

After an evidentiary hearing, the trial court denied EnviroPower's motion to vacate foreign judgment, motion for new trial, and motion to stay enforcement of judgment and made the following findings:

---

**1.** *See EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.,* No. 01–04–01111–CV, 265 S.W.3d 16, 2008 WL 456491 (Tex.App.–Houston [1st Dist.] Feb. 21, 2008, no pet. h.) (Order).

**2.** EnviroPower's complaint regarding the trial court's refusal to grant the stay is addressed in the opinion issued herewith.

(1) The underlying New York judgment is entitled to full faith and credit.

(2) EnviroPower, LLC ("Judgment Debtor") has timely filed a notice of appeal from the New York judgment.

(3) Net Worth has not been defined in the supersedeas bond statute.

(4) One definition of Net Worth is assets minus liabilities.

(5) Market Value means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

(6) *The evidence adduced at the hearing does not reflect the fair value of the primary assets of the Judgment Debtor, which are the federal air permits.*

(7) Judgment Debtor's assets minus liabilities is negative $12,000,000.00.

(8) A buyer stands willing to purchase Judgment Debtor for $10,000,000.00.

(9) The evidence adduced at the hearing establishes that business valuation experts do not rely exclusively on assets minus liabilities in determining the value of businesses.

(10) *Judgment Debtor's current net worth for purposes of setting a supersedeas bond is $8,000,000.00.*

(11) Judgment Debtor is likely to suffer substantial economic harm if required to post security in the full amount required by the supersedeas statute.

(12) The Court determines that a supersedeas bond in the amount of $200,000.00 will not cause Judgment Debtor substantial economic harm.

(Emphasis added.)

## Standard of Review

We review the trial court's rulings concerning the amount and type of bond required and the sufficiency of the sureties under an abuse of discretion standard. TEX.R.APP. P. 24.4; *see also Miller v. Kennedy & Minshew, Prof'l Corp.,* 80 S.W.3d 161, 165 (Tex.App.–Fort Worth 2002, no pet.). The test for whether a trial court abused its discretion is whether the trial court acted arbitrarily or unreasonably in light of all the circumstances of the case. *McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995); *Lewis v. Western Waste Indus.,* 950 S.W.2d 407, 410 (Tex.App.–Houston [1st Dist] 1997, no writ).

## Setting of Supersedeas Bond

A judgment debtor may show a ground on which the enforcement of the judgment would be stayed, and the court may require the same security for suspending the enforcement that is required in accordance with section 52.006 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 35.006(b) (Vernon Supp. 2007). Section 52.006 articulates the requirements for setting the amount of a supersedeas bond for a foreign judgment as follows:

(b) Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of:

(1) 50 percent of the judgment debtor's *net worth;* or

(2) $25 million.

(c) On a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post security in an amount required under Subsection (a) or (b), the trial court shall lower

the amount of the security to an amount that will not cause the judgment debtor substantial economic harm.

*Id.* § 52.006(b), (c) (Vernon Supp.2007) (emphasis added). The Texas Rules of Appellate Procedure, applicable to the security required for appeals, also addresses the security calculation, but with a slight variation. Rule 24.2(a) states that the amount of a security bond cannot exceed 50 percent of the judgment debtor's *current* net worth or $25 million. TEX.R.APP. P. 24.2(a)(1).

Neither statute defines "net worth," and EnviroPower argues that we should look to the appellate review guidelines in Rule 24.4 for guidance in interpreting the "net worth" language of section 52.006. TEX. R.APP. P. 24.4 (appellate court cannot modify security amount to exceed Rule 24.2(a)(1)). EnviroPower contends that, although section 52.006 does not contain the clause "current net worth," the phrase is necessarily inherent in the code provision because, for bond purposes, a judgment debtor's net worth at any other time than "currently" is irrelevant. Thus, EnviroPower asserts that its "future" sale for $10 million does not support the trial court's finding that the company's net worth is $8 million. EnviroPower argues that its net worth is negative $12 million, and as a consequence, under section 52.006(b) and Rule 24.2, it was not required to post security in any amount. I disagree.

In this case, the trial court found that the evidence produced by EnviroPower regarding its net worth undervalued its primary assets, its federal air permits, on its balance sheet. Thus, the trial court did not err in considering evidence regarding EnviroPower's pending sale to determine the value of these primary assets and to calculate its net worth. The trial court heard testimony from two witnesses regarding the issue of EnviroPower's net worth. Deborah Dawson, EnviroPower's chief financial officer, testified that EnviroPower was formed for the purpose of identifying plant locations that were feasible to build power plants, and it has obtained air permits in Kentucky and Illinois. In her deposition testimony, Dawson explained that these air permits take between two to seven years to obtain if a company can obtain them at all. Also in the record is evidence that these air permits are the most valuable assets that EnviroPower owns. The record reflects that, without the permits, no power plants can be built.

Dawson also presented a document entitled EnviroPower's "Management Report 2003" that contained EnviroPower's balance sheet as of December 31, 2003.[3] Using this document, Dawson explained that, on an accrual basis under generally accepted accounting principles ("GAAP"), EnviroPower's net worth is negative $12,000,000. Nevertheless, she also testified that, initially, she placed the value of EnviroPower between $20 and $40 million. More recently, she represented to potential investors that the company was worth $10 million. Finally, Dawson testified that there was a pending contract for the sale of EnviroPower to Khanjee. She testified that, pursuant to this contract, Khanjee is to pay $10 million for EnviroPower in addition to another $8 million to El Paso as "a return of their lending to us."[4]

---

**3.** Although Dawson testified that part of the sum included under the asset entitled "Development Costs" represented (1) the value or "intangible cost" to Enviropower of procuring the air permits and (2) "the value of [El Paso's] right to purchase part of Enviropower at that point in time," the record is not clear as to what those sums are.

**4.** The record is silent as to the specifics of the loan arrangement with El Paso.

Nick D'Ambrosio, a senior manager of an international accounting firm, testified that, in addition to holding a CPA license and a juris doctor degree, he is also a certified valuation analyst, which relates to the valuation of businesses. D'Ambrosio testified that the difference between his calculation of net worth and Dawson's calculation based on EnviroPower's balance sheet was that he applied the fair market values rather than historic costs or book values to determine EnviroPower's assets. D'Ambrosio testified that, to determine current net worth, EnviroPower's assets should be valued at their current fair market value, not their historic costs.

D'Ambrosio explained that the permits were more valuable than Dawson's balance sheet suggests. D'Ambrosio testified that the fact that and amount for which companies were willing to spend money to preserve the permits by purchasing EnviroPower, despite its liabilities, is evidence of the fair market value of the permits. He testified that this information should be used in calculating EnviroPower's net worth:

Q—What, in your—having looked at all the documents that you've looked at in this case, Nick, what is the net worth of EnviroPower, in your opinion?

. . .

A—As an appraiser, what I—I looked at is the—the market transactions that were testified to by Ms. Dawson, and, clearly, they're a series of valuations where they're negotiating transactions, whether it's with Kinder Morgan, Primary Energy, Apogee, or Khanjee, *that indicate that there is some value to*

these air permits in—in excess of—or around $10 million of future value.

*Clearly, that—that would lead me to believe that there can't be no value to this firm.* You have companies that are willing to put up money. El Paso continually puts out money. If these had no value, there'd be no reason for someone to continue to expend money to try to preserve this asset.

So in my view, there is net worth here, and trying to quantify that is difficult, but the best indication that we have is the exchange that Khanjee was willing to negotiate and—and execute with EnviroPower which puts the value at about $10 million.

(Emphasis added.) After finding that the definition of "net worth" is assets minus liabilities, the trial court used the evidence presented by D'Ambrosio to determine the value of its assets. *See* Tex. Civ. Prac. & Rem.Code Ann. § 52.006(b). The trial court recognized that the evidence produced by EnviroPower stated that its assets minus liabilities totaled a negative $12 million. However, the court also found that this evidence *did not accurately reflect the fair value of EnviroPower's primary assets, which are federal air permits.*[5] Considering, among other things, evidence surrounding the pending sale of EnviroPower,[6] including the amounts to be reimbursed to various entities as part of this sale and D'Ambrosio's testimony, the trial court ruled that EnviroPower's net worth is $8 million. However, acting within its discretion, the trial court ruled that, if required to provide security for the full amount of the New York judgment, EnviroPower would suffer substantial economic

---

**5.** EnviroPower does not challenge this fact finding on appeal.

**6.** This included evidence regarding EnviroPower's negotiations with at least three other willing buyers, in addition to Khanjee, all of whom offered to assume EnviroPower's liabilities and pay a range of from $1 to $10 million for EnviroPower.

harm. The court therefore lowered the security amount to $200,000.

We must review the trial court's interpretation of the applicable statutes de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex.2002). The overriding objective of statutory construction is to determine and give effect to the Legislature's intent. *See Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002). In order to ascertain legislative intent, we must first look to the plain and common meaning of the words used by the Legislature. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998 & Supp.2007); *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

"Net worth" is generally defined as the excess of total assets over total liabilities. *See, e.g.*, BLACK'S LAW DICTIONARY 1639 (8th ed.2004); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1519 (1993 ed.); INVESTOPEDIA (2000 ed.). Many courts have also accepted this definition. For example, in holding that the unambiguous meaning of the term "net worth" in section 52.006 means the difference between total assets and total liabilities, the Fourteenth Court of Appeals made the following observation:

> The Legislature could have required the trial court to determine the Security Amount based on 50 percent of a judgment debtor's value, using whatever measure of value the trial court found to be most appropriate. However, the Legislature did not do so; instead, it required that the trial court base this determination on the judgment debtor's "net worth."

*Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 915 (Tex. App.–Houston [14th Dist.] 2005, no pet.). Similarly, the United States Court of Appeals for the Seventh Circuit held that the plain meaning of "net worth," in accordance with GAAP, is the difference between total assets and total liabilities. *Continental Web Press, Inc. v. NLRB*, 767 F.2d 321, 323 (7th Cir.1985), *disapproved of on other grounds by Comm'r. v. Jean*, 496 U.S. 154, 160–66, 110 S.Ct. 2316, 2319–23, 110 L.Ed.2d 134 (1990). The court went on to note that, because the Legislature did not define the statutory term "net worth," it is fair to assume that, "if it had thought about the question, it would have wanted the courts to refer to [GAAP]." *Id.*

When, as here, there has been a finding by the trial court that the debtor's evidence does not state the true value of a company's assets used in calculating "net worth," the court does not err in looking to the concept of market value to determine the value of a company's assets. An asset's fair market value is usually the best evidence of its true value. *Zeptner v. Zeptner*, 111 S.W.3d 727, 741 (Tex.App.– Fort Worth 2003, no pet.); *Beavers v. Beavers*, 675 S.W.2d 296, 299 (Tex.App.– Dallas 1984, no writ). "Fair market value" has consistently been defined as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex.1972); *Nelson v. Najm*, 127 S.W.3d 170, 177 (Tex.App.– Houston [1st Dist.] 2003, pet. denied).

Furthermore, the legislative history of section 52.006 reveals that, by not defining the term "net worth," the Legislature intended to give trial courts the discretion to weigh all of the evidence and not just a company's accounting records, in determining the appropriate amount of a supersedeas bond. *See* HOUSE RES. BILL ORG., BILL ANALYSIS, H.B. 4, 78th Leg., R.S., p. 46 (2003) ("There is no easy way to define 'net worth,' and it is important to give judges discretion to determine this on a case-by-case basis. If a plaintiff feels that

a defendant is manipulating its assets to reduce the bond amount, the plaintiff can ask the judge to address this."). Thus, I would hold that, for supersedeas purposes, where the evidence presented by the debtor does not reflect the fair value of its assets, the court does not err in considering evidence of the market value of a company's assets to make the net worth calculation of assets minus liabilities. A company's book value net worth can be manipulated, making it an unreliable means of determining a company's true net worth. *See id.; Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 330–31 (Tex. 1993) (Gonzalez, J., concurring) (punitive damages).

Relying on our recent holding in *LMC Complete Automotive, Inc. v. Burke,* and our sister courts' holdings in *Ramco* and *G.M. Houser,* EnviroPower argues that the trial court erred in considering evidence regarding market value and that, in doing so, the court created a new "market value" test for the calculation of net worth that is not authorized under either section 52.006 or Rule 24.2(a)(1). *See LMC Complete Automotive, Inc. v. Burke,* 229 S.W.3d 469 (Tex.App.–Houston [1st Dist.] 2007, n.p.h.); *G.M. Houser, Inc. v. Rodgers,* 204 S.W.3d 836 (Tex.App.–Dallas 2006, no pet.); *Ramco Oil & Gas, Ltd.,* 171 S.W.3d at 915. I would hold that EnviroPower's reliance on these cases is misplaced. The *Burke* analysis is applicable to these facts, and the other two cases are distinct from the case at bar.

*Burke* stands for the proposition that when, as here, there is credible evidence that a component of net worth, either assets or liabilities, has been incorrectly valued on the balance sheet, the trial court does not err when it looks to the record as a whole to determine the true value of the assets or liabilities. In *Burke,* the trial court recognized that net worth was meas-

ured as assets minus liabilities. The debtor claimed a negative net worth, and the creditor argued that the value of the liabilities on the balance sheet was overstated and produced evidence to support its argument. The trial court agreed with the creditor and looked at the record as a whole to determine the true value of the liabilities. It adjusted the value of liabilities to delete the depreciation expense and recalculated net worth. Similarly, the trial court here recognized that net worth was measured as assets minus liabilities. The debtor/EnviroPower claimed a negative net worth. The creditor/Bear, Stearns argues that an asset on the balance sheet, the air permits, was undervalued, and presented evidence to support the argument—including evidence of the company's pending sale for $10 million, the costs that continued to be incurred to keep these permits from expiring, and the fact that Dawson did not specify a value for the air permits on the balance sheet. The trial court here, just as in *Burke,* looked at the record as a whole to determine the true value of the assets. During this evaluation, the trial court looked at the evidence presented regarding the market value of EnviroPower. The trial court adjusted the value of the assets to reflect the true value of the air permits and recalculated the net worth accordingly.

In *Ramco,* where the court rejected looking to any evidence of "market capitalization" in making the net worth calculation, there was no finding by the trial court that the debtor had presented evidence that undervalued its assets or misstated its liabilities. Thus, under those circumstances, there was no justification for the trial court to consider any information other than the evidence presented by the company's balance sheets or "book value" to determine the true value of the company's assets. That is not the case here.

Similarly, in *G.M. Houser* the court of appeals found that there was no factual basis for the trial court to conclude that the debtor had fraudulently undervalued or misstated its assets or to not consider the debtor's evidence of assets and liabilities as true. In this case, there was a finding, supported by the evidence presented, that EnviroPower's evidence did not state the fair value of its assets; therefore, the trial court did not abuse its discretion in looking to evidence of the market value of these assets to calculate EnviroPower's net worth. Under these circumstances, I would hold that the trial court was within its discretion in finding EnviroPower's current net worth to be $8 million. I would further hold that the trial court did not abuse its discretion in setting the bond amount at $200,000.

I respectfully disagree with the conclusion that using fair market value accounting principles to determine the value of a company's assets would lead to "confusion and uncertainty among litigants and trial courts in determining bond amounts" or impose a burden on a litigant's right to pursue an appeal. The fair market valuation of assets has been a part of GAAP, and thus used by business litigants, for several decades in standards implemented by the Financial Accounting Standards Board ("FASB"), including those standards dealing with inventions, investments, financial instruments of all kinds, business combinations and stock options.[7] For ex-

ample, it has long been required for accountants to note impaired assets to a fair value less than their original cost or book value. Recently, FASB has enacted additional standards regarding the use of fair valuation principles in determining the value of assets carried on a company's balance sheet.[8] Several of these standards specifically require companies to record acquired intangible assets, which would include government permits, at fair value not historic costs or book value.[9]

In this case, the fair market value of EnviroPower's primary asset, the permits, is more relevant to the court's decision regarding a company's *current* ability to obtain a bond than historic costs, especially where, as here, there is evidence that using historic costs or book values leads to a vast undervaluation of an asset. *See, e.g.,* Tex.R.App. P. 24. (requiring court to determine *current* net worth.). Furthermore, if a litigant believes that, under a fair market evaluation of its assets, it still cannot post a bond, it would not be forced into bankruptcy or asset liquidation to proceed with its appeal. Texas Rule of Appellate Procedure 24 provides litigants with alternative means of preventing execution of a judgment pending appeal, without the need for posting a bond. In this case, however, EnviroPower did not seek any such alternative relief from the trial court or from this Court on appeal.

Finally, the majority cites to a portion of EnviroPower's appellate brief to support

---

7. The following pronouncements all refer to the use of fair value principles: FASB Statement of Financial Accounting Standard ("SFAS") Nos. 13, 15, 19, 23, 28, 35, 45, 60, 61, 63, 65 through 68, 84, 87, 98, 106, 107, 114, 115, 116, 124, 126, 133, 136, 138, 140, 141, 142, 144, 146, 149, 150, 153, 156; Interpretation Nos. 9, 23, 24, 45; and Opinion Nos. 18, 21, 28, and 29.

8. *See* FASB SFAS No. 159, "The Fair Value Option for Financial Assets and Financial Lia-

bility"; SFAS No. 157, "Fair Value Measurements"; and Statement of Financial Accounting Concept No. 7, "Using Cash Flow and Value in Accounting."

9. *See, e.g.,* SFAS 141, "Business Combinations"; SFAS 142, "Goodwill and other Intangible Assets"; and SFAS 144, "Accounting for the Impairment or Disposal of Long Lived Assets."

the conclusion that using fair market value accounting principles to determine net worth would lead to "arbitrariness" in net worth determinations. I respectfully disagree. EnviroPower's statements in the brief do not reflect all of the facts before the trial court. For example, EnviroPower states that the permits "are not transferable or assignable." However, while EnviroPower cannot sell the permits, Dawson and D'Ambrosio testified that they can be acquired by the company that purchases EnviroPower. D'Ambrosio testified that, consequently, they have great value. EnviroPower's appellate brief also states that the value of the air permits "was *not* controverted at the hearing" before the trial court. While Bear, Stearns did not controvert the *book value or historic cost* of the permits as they are carried on EnviroPower's balance sheet, it did challenge and continues to challenge the conclusion that the book values represent the *current* value of the air permits.

For all of the reasons stated above, I would hold that the trial court did not abuse its discretion in deciding to consider the market value of the permits, rather than the book value presented by EnviroPower, in calculating EnviroPower's net worth.

### Conclusion

Accordingly, I would affirm the trial court's ruling on the bond, and I respectfully dissent from the En Banc Order and the *Opinion on En Banc Order* holding to the contrary.