**535 BROADWAY ASSOCIATES,**
Plaintiff,

v.

**COMMERCIAL CORPORATION OF AMERICA, a/k/a CMC,**
Defendant.

No. 91 Civ. 8129(SS).

United States District Court,
S.D. New York.

Sept. 1, 1993.

Leonard A. Sclafani, Polatsek and Sclafani, New York City, for plaintiff 535 Broadway Associates.

Douglas H. Meal, Matthew T. Collins, Ropes & Gray, Boston, MS, for defendant Commercial Mortg. Corp. of America.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Commercial Corporation of America moves, pursuant to Fed.R.Civ.P. 37(d) or in the alternative Fed.R.Civ.P. 37(b)(2)(C), to dismiss plaintiff 535 Broadway Associates' breach of contract claim for plaintiff's failure to respond for over a year to defendant's discovery requests and failure to comply with this Court's discovery orders. Following a hearing on this matter and for the reasons set forth below,

CMC's motion is granted and this case is **DISMISSED** with **PREJUDICE.**

## BACKGROUND

This case stems from the alleged breach of a mortgage loan commitment between 535 Broadway Associates (hereinafter "535 Broadway") and Commercial Mortgage Corporation of America (hereinafter "CMC"). 535 Broadway, a commercial partnership organized under the laws of New York, is the owner of a parcel of property located at 535 Broadway, New York, New York, occupied by a six story residential apartment building with eight stores (hereinafter "the building").

In the Spring of 1990, 535 Broadway defaulted on the building's mortgage payments to Lincoln Savings Bank (hereinafter "Lincoln") and Lincoln commenced foreclosure proceedings. Seeking to avoid foreclosure, 535 Broadway applied to CMC for a mortgage loan to satisfy the amounts due and owing to Lincoln.

Negotiations ensued and, on February 4, 1991, CMC issued a mortgage commitment letter (hereinafter "commitment letter") to 535 Broadway. Under the terms of the commitment letter, CMC was to loan 535 Broadway two (2) million dollars provided that 535 Broadway complied with a number of conditions including, *inter alia*, the funding of an escrow account to cover taxes owed on the building and the closing on the loan within forty-five (45) days of 535 Broadway's acceptance of the commitment letter.

535 Broadway claims that CMC twice agreed to extend the loan closing date to provide 535 Broadway with additional time to comply with the original loan conditions and other conditions thereafter imposed. 535 Associates maintains that as of the final loan closing date agreed to by CMC, it had complied with all of the conditions set forth in the commitment letter and was ready to close on the loan agreement when CMC informed it that the loan would not be funded.

CMC disputes 535 Broadway's characterizations of events and counters that the loan was not funded because the loan commitment agreement had expired and because 535 Broadway had failed to perform the conditions precedent to closing.

## FINDINGS OF FACT

On September 17, 1991, 535 Broadway initiated an adversary proceeding against CMC in the United States Bankruptcy Court for the Southern District of New York. On November 27, 1991, CMC moved for an order pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011, withdrawing the reference to the Bankruptcy Court of the adversary proceeding. On December 4, 1991, CMC's motion was transmitted to the United States District Court for the Southern District of New York and a hearing on the motion was scheduled before the Honorable Lawrence M. McKenna. The hearing was cancelled when plaintiff's counsel informed the court that he would not oppose CMC's motion. The court granted CMC's motion to withdraw the reference on February 14, 1992.

On February 10, 1992, CMC served on 535 Broadway, by first-class mail, CMC's First Set of Discovery Requests ("CMC's Discovery Requests"). *See* Exhibit 1 (hereinafter "Exh. ___") attached to the Affidavit of Douglas H. Meal in Support of CMC's Motion to Dismiss (hereinafter "Meal Aff."). Plaintiff's responses to CMC's Discovery Requests were due on or before March 11, 1992. Plaintiff did not respond to CMC's Discovery Requests on or before that date.

Shortly after March 11, 1992, CMC contacted Mr. Sclafani, 535 Broadway's attorney, to inquire as to the status of plaintiff's responses to CMC's Discovery Requests. Mr. Sclafani claimed he had never received CMC's Discovery Requests. Thereafter, on March 18, 1992, CMC served a duplicate set of CMC's Discovery Requests on Mr. Sclafani, this time by fax. Exh. 2 to Meal Aff.

As of April 17, 1992 (thirty days after CMC's Discovery Requests had been re-served), plaintiff still had not responded to CMC's Discovery Requests. CMC thereupon called plaintiff's counsel several times

to inquire as to the status of plaintiff's responses. None of the phone calls were returned. Meal Aff. at ¶ 5. On May 15, 1992, CMC sent Mr. Sclafani a letter requesting that plaintiff comply with its discovery obligations or call to discuss CMC's Discovery Requests. Exh. 3 to Meal Aff. Plaintiff also failed to respond to this letter. Meal Aff. at ¶ 5.

On July 2, 1992, in light of plaintiff's continuing failure to respond to CMC's Discovery Requests and Mr. Sclafani's failure to return any calls to discuss the discovery issues, CMC requested a conference with the court. Exh. 4 to Meal Aff. A conference was originally scheduled for July 16, 1992, but was postponed, and was not thereafter rescheduled.

On October 2, 1992, this case was reassigned to my docket. In the Notice of Reassignment that was sent to the parties on or about that date, I ordered plaintiff to forward a Status Report in the form specified in the notice to CMC. Plaintiff failed to comply with my order. On October 28, 1992, CMC sent a letter to plaintiff reminding plaintiff that it had not complied with the Court's order to complete the Status Report. Once again, this letter demanded that plaintiff respond to CMC's Discovery Requests. Exh. 5 to Meal Aff. Plaintiff never responded to CMC's October 28 letter and never complied with this Court's order to complete the Status Report. Moreover, plaintiff continued its failure to respond to CMC's Discovery Requests.

On October 19, 1992, I scheduled a status conference for this case to be held on November 9, 1992. At some time prior to November 9, 1992, my office advised Mr. Sclafani that the November 9 Status Conference would have to be adjourned and directed Mr. Sclafani to so advise counsel for CMC. Mr. Sclafani failed to comply with this directive. As a result, on November 9, 1992, CMC's counsel travelled from Boston to New York for the status conference only to find upon their arrival that, unbeknownst to them, the conference had been postponed.

I then rescheduled the conference to occur by telephone on November 10, 1992.

During that telephone conference, plaintiff's counsel informed me that plaintiff had failed to comply with CMC's Discovery Requests because plaintiff believed that it might be able to secure a replacement loan to that of CMC's loan within a number of weeks and that such a loan would help plaintiff to quantify damages more precisely and perhaps lead to a settlement. I cautioned plaintiff's counsel that neither he nor his client had a unilateral right to decide whether or when to comply with discovery demands. I reminded plaintiff's counsel that the Federal Rules of Civil Practice required him to seek the court's approval for an extension of any discovery deadlines. I further advised plaintiff's counsel that although his conduct to date warranted my not granting him any further extensions of time to respond to CMC's Discovery Requests, I would give plaintiff more time than it anticipated was necessary to wind-up its efforts to secure another loan but only on condition that plaintiff understood that this was the last extension it would receive. I underscored that if plaintiff's efforts to secure a loan were not completed or unsuccessful, it would still have to respond to CMC's Discovery Requests on or before January 6, 1993. I further ordered plaintiff and CMC to submit a Joint Case Management Plan by that same date.

After November 10, 1992, CMC repeatedly called Mr. Sclafani and requested that plaintiff participate in the preparation of a Joint Case Management Plan. Plaintiff's counsel failed to respond to these calls. Meal Aff. at ¶ 9. On December 28, 1992, CMC sent Mr. Sclafani a letter requesting that plaintiff adhere to the Court's directive and participate in the formulation of the Plan. Mr. Sclafani never responded to this December 28, 1992 letter.

On January 5, 1993, after failing to obtain plaintiff's cooperation, CMC submitted its own proposed Case Management Plan. On January 8, 1993, a second telephone conference was held with the parties. Mr. Sclafani advised me that despite my warning that no final further extensions to respond to CMC's Discovery Requests would

be granted, his client had chosen to concentrate his efforts on securing the alternative loan instead of answering the discovery demands. I reminded Mr. Sclafani of my earlier warning and adopted, as an order, CMC's proposed Plan substantially in the form proposed by CMC. I again gave 535 Broadway additional time, until February 1, 1993, to serve its responses to CMC's Discovery Requests. I warned Mr. Sclafani that I would accept a motion to dismiss the complaint if plaintiff failed to comply with this new and last deadline.

Plaintiff failed to respond to CMC's Discovery Requests by February 1, 1993. On February 10, 1993, CMC requested, pursuant to this Court's Rules of Practice, a premotion conference to discuss the filing of a motion to dismiss for plaintiff's one-year failure to respond to CMC's Discovery Requests and plaintiff's repeated disobedience of this Court's orders. A conference was scheduled for February 22, 1993.

At the February 22 conference, Mr. Sclafani advised me that he was having difficulties communicating with his client and had therefore been unable to prepare responses to CMC's Discovery Requests. I informed counsel that 535 Broadway's failure to provide any discovery for over one year was in violation of the Federal Rules of Civil Procedure and this Court's specific orders. I granted leave to CMC to file a motion to dismiss pursuant to Fed.R.Civ.P. 37(d) and 37(b)(2)(C).

On March 1, 1993, the motion to dismiss was filed. On March 8, 1993, 535 Broadway served incomplete responses to CMC's Discovery Requests.

## DISCUSSION

One of the primary roles of the Federal Rules of Civil Procedure (hereinafter "Rules") is to "achieve disclosure of all the evidence relevant to the merits of a controversy." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2nd Cir.1989) (citing Fed.R.Civ.P. 26(b)(1); *see generally* Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 497–508 (1970). As recognized by the Supreme

Court, "[t]he need to develop all relevant factors in the adversary system is both fundamental and comprehensive.... The very integrity of the judicial system and public confidence in the system depends on full disclosure of the facts, within the rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

The Rules are not self-executing; compliance is dependent almost exclusively on the Bar's affirmative adherence to the Rules and the deadlines set by courts. Nevertheless, the Rules are not without strict enforcement provisions. Abuse, non-compliance and flagrant disregard of the discovery process can all result in sanctions under Rule 37.

Rule 37 provides, in relevant part, that:
**Sanction by the Court in Which Action is Pending.**

If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule [*i.e.*, motion for order to compel discovery], or if a party fails to obey an order entered under Rule 26(f) [*i.e.*, a rule entered pursuant to a discovery conference], the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\*   \*   \*   \*   \*   \*

An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Fed.R.Civ.P. 37(b)(2) and (b)(2)(C).

■ Sanctions imposed under Rule 37 have the immediate effect of insuring compliance with court orders in the particular case. *See Cine Forty–Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1066 (2d Cir.1979). The Rule also serves to "penalize[s] those whose conduct ... warrant such a sanction," *see National Hockey League*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976), by ensuring that the recalcitrant party will not enjoy the fruits of its own non-compliance. *Cine Forty–Second St. Theatre v. Allied Art-*

*ists,* 602 F.2d 1062, 1066 (2d Cir.1979). Finally, the Rule has the salutary effect of "deter[ing] those who might be tempted to such conduct in the absence of such a deterrent." *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *see also Adkins v. United States,* 816 F.2d 1580, 1582 (Fed. Cir.1987) ("[t]he sanction of dismissal is intended to be both a punishment for the offender and a deterrence to others").

■ The Second Circuit has time and again reaffirmed "the importance of appropriate sanctions as a necessary means of dealing with a recusant party." *Update Art Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988) (*citing, Cine,* 602 F.2d at 1063–64). Although the sanction of dismissal is the severest sanction available and should be reserved for rare instances, *see National Hockey League,* 427 U.S. at 640, 96 S.Ct. at 2779; *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958), this circuit's recent decisions have made clear that the era when courts shied away from the imposition of the full range of sanctions enumerated in Rule 37, including dismissal, is a thing of the past. *See, e.g. Jones v. Niagra Frontier Transportation Auth.,* 836 F.2d 731, 734 (2d Cir.1987), *cert. denied,* 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988) (sanction of dismissal proper where plaintiff, ignoring the magistrate judge's admonition about sanctions, refused repeatedly to answer questions during court ordered deposition); *see also John B. Hull, Inc. v. Waterbury Petroleum Prods. Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (sanction of dismissal appropriate where plaintiff furnished incomplete interrogatories and failed to specify the basis for damages in violation of court orders mandating compliance with defendant's discovery requests); *cf. Cine Forty–Second,* 602 F.2d 1062 (2nd Cir.1989) (entry of a one million dollar default judgment for failure to appear for court ordered deposition upheld as proper).

The Second Circuit's acceptance of the use of dismissal as a sanction in appropriate cases is particularly evident from its decision in *Sieck v. Russo,* 869 F.2d 131 (2d Cir.1989). In *Sieck,* the district court entered a default judgment against defendants and denied defendants' motion to set aside the default after defendants repeatedly failed to appear at court ordered depositions.

On appeal, defendants argued that the court abused its discretion in refusing to set aside the default judgment. In particular, defendants argued that their failure to appear at the court ordered depositions did not warrant dismissal of the action and that the district court abused its discretion in failing to consider "softer" sanctions. *Sieck,* 869 F.2d at 134.

The Second Circuit rejected defendant's argument finding it contrary "to the clear language of Rule 37 ... and the cases dealing with its application." The court flatly rejected the notion that Rule 37's enumeration of lesser sanctions requires a district court to eschew harsher sanctions in favor of lesser sanctions. *Id.* The court underscored its earlier pronouncement in *Update Art, Inc., v. Modiin Publishing, Ltd,* 843 F.2d 67, 73 (2d Cir.1988):

> [In *Update,*] we emphasize[d] the importance we place on a party's compliance with discovery orders, and we warned that '[a] party who flouts such orders does so at his peril.' Although we then viewed our decision as 'strong medicine,' *id.,* today we find it necessary to renew the prescription.

869 F.2d 131, 133 (2d Cir.1989).

■ The sanction of dismissal is appropriate when a party's failure to comply with a discovery order is due to "willfulness, bad faith or fault of the party." *See, e.g., Jones v. Niagra Frontier Transp. Auth (NFTA), citing Salahuddin v. Harris,* 782 F.2d 1127, 1132 (2d Cir.1986) (quoting *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1005, 2 L.Ed.2d 1255 (1958). However, ordinary negligence is not a sufficient basis for dismissal, *see Cine,* 602 F.2d at 1067 (citing *Affanato v. Merrill Bros.,* 547 F.2d

**408**

138 (1st Cir.1977), but neither is willfulness nor bad faith a prerequisite. *Id.* "Grossly negligent" failure to obey an order "which falls short of conscious disregard of court orders" and amounts to "total dereliction of professional responsibility" is "properly embraced" within the "fault component of *Societe Internationale*'s triple criterion." *Cine*, 602 F.2d 1062, 1067.

` ■ I find that 535 Broadway has been grossly negligent in the prosecution of this case and has acted in bad faith in knowingly and intentionally disregarding CMC's Discovery Requests and this Court's Orders. Plaintiff's patent disregard of CMC's Discovery Requests has seriously prejudiced CMC by substantially increasing CMC's litigation costs and preventing the expeditious resolution of this dispute by dispositive motion or trial. The administration of justice has been harmed by the lack of respect plaintiff and his attorney have evidenced when they not just ignored the repeated calls of opposing counsel but ignored court orders and failed to seek extensions with an explanation before dates set by the Court expired. This is the type of unprofessional and uncaring conduct that constitutes not just gross negligence but bad faith. For this Court to impose a sanction less than dismissal would erode further the sagging confidence the public is already experiencing in a judicial system wrought with delays. Courts should not and can not permit delays occasioned by irresponsible acts and attitudes toward the judicial process and its rules of procedure.

For more than a year, CMC by telephone and letters repeatedly requested answers to its First Set of Discovery Requests. CMC pursued every avenue of recourse short of judicial intervention but each attempt was either ignored or met by false promises that the responses and documents would be forthcoming. Eventually, CMC was forced to request a conference in anticipation of a motion to compel.

535 Broadway's patently unprofessional behavior continued and intensified after this case was assigned to my docket. Immediately upon reassignment, and with a view towards the efficient resolution of this case, I instructed 535 Broadway to complete a Status Report on Reassignment. 535 Broadway never completed this report.

On November 10, 1992 and again on January 8, 1993, I personally instructed counsel for 535 Broadway to comply with CMC's Discovery Requests first by January 6, 1993, and then by February 1, 1993. On November 10, 1992, I also instructed 535 Broadway to file a Joint Case Management Plan no later than January 6, 1993. I explained the importance of compliance with this date because CMC's Discovery Request had been outstanding for more than eight (8) months. 535 Broadway failed to participate in the drafting of the Joint Case Management Plan even though CMC wrote to remind counsel of his duty to do so and notwithstanding a clear statement in my Case Management Order that "[i]f a party ... fails to obey a scheduling or pretrial order, ... or if a party ... fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others, any of the orders provided in Rule 37(b)(2)(B), (C), (D)."

Equally significant, 535 Broadway failed to provide even the most basic production of documents responsive to CMC's Discovery Requests by either court ordered date. It was not until after CMC filed its motion to dismiss that 535 Broadway, for the first time, offered an explanation as to why it had failed for over a year to provide an answer to CMC's Discovery Requests. For the reasons discussed below, I find this last minute proffer and reason unpersuasive to excuse CMC or its counsel's failures in this case.

In a belated attempt to avert dismissal, counsel for 535 Broadway informed the Court in his responsive papers to the motion to dismiss and at oral argument that plaintiff was unable to comply with CMC's Discovery Requests (1) because the majority of 535 Broadway's files were in the possession of its former counsel with whom it had a fee dispute, and (2) because 535 Broadway's general manager was unable to "simultaneously pursue, in a diligent

fashion, both the instant litigation and the plaintiff's attempt to refinance the mortgage on plaintiff's building."

535 Broadway is in essence asking the Court to sanction counsel and 535 Broadway's own personal litigation timetable. This I will not do. As aptly stated by the First Circuit, long gone are the days when "we can indulge lawyers in a manner and taste that best suits their convenience." *Damiani v. Rhode Island Court*, 704 F.2d 12, 16 (1st Cir.1983). "Each disregarded discovery order required the court to meet with all the parties and issue yet another order. The wasted time and effort that resulted from [plaintiff's failure to comply] cannot be tolerated by courts that are overburdened by the continuing increase in pending matters." *Urban Elec. Supply v. N.Y. Convention Ctr.*, 105 F.R.D. 92, 98 (E.D.N.Y.1985). This Court's patience is tasked by 535 Broadway's suggestion that its complete failure to respond to CMC's Discovery Requests for over a year and its complete and utter disregard of this Court's orders should be excused because it choose to devote its attention elsewhere and did not even bother to inform its adversary or the Court of its difficulties until after a motion to dismiss was filed.

Plaintiff counsel's belated promise that 535 Broadway will now provide appropriate discovery are unworthy of credence. Mr. Sclafani advised the Court only at oral argument that he believed the fee dispute with plaintiff's former counsel could be resolved in the near future but gave no details to confirm the probability or even possibility of such a resolution. In any event, these assertions, like many before, are difficult to accept in light of 535 Broadway's previous failure to honor representations and commitments.

The Court does not believe that 535 Broadway is in a better position to litigate this case now than it was when this lawsuit was commenced. Indeed, the contrary is evident from 535 Broadway's recent inadequate responses to plaintiff's interrogatories. In its responses, counsel for 535 Broadway acknowledges that plaintiffs' responses are incomplete but argues that plaintiff should be excused because it is still unable to procure all documents responsive to CMC's request. Inevitably, this will result in yet another round of wasteful Discovery Requests for materials that should have been produced more than a year ago. 535 Broadway's belated, incomplete answers to CMC's Discovery Requests are not only inadequate, they are simply too little, too late.[1]

In its papers and at oral argument 535 Broadway cavalierly asserts that the sanction of dismissal is inappropriate because CMC has not incurred substantial costs or has not been substantially prejudiced by 535 Broadway's failure to produce discovery. The naked facts belie this self-serving statement. For more than a year, CMC has spent all of its time and effort trying to obtain from 535 Broadway the production of documents that comply with its *first document request* and responses to comply with its *first set of interrogatories*. Numerous calls, letters, conferences, court appearances and the filing of motions were necessary before 535 Broadway's counsel deemed it appropriate to offer last-minute, inadequate explanations for its failure to comply with discovery and this Court's orders. To state that the cost associated with the above is great is to have a pen-

---

1. At oral argument, Mr. Sclafani was advised of this Court's predisposition to refer this matter to the appropriate Disciplinary Committee for review of his conduct in this matter. The Court noted that this is not the first time that Mr. Sclafani's discovery actions have resulted in dismissal of his clients' actions. *See, e.g., Industrial Electronics Private, Limited v. Bendix Corporation*, No. 85 Civ. 2433, 1989 WL 76004 (July 6, 1989) (breach of contract action dismissed pursuant to Fed.R.Civ.P. 37 for Sclafani's failure to answer defendant's interrogatories); *Stokes v. McKeithan*, 172 A.D.2d 1077, 569 N.Y.S.2d 255, 256 (4th App.Div.1991) (complaint dismissed when Mr. Sclafani "offered no reason for the failure to respond to defendants demands for a bill of particulars for almost six years."). Mr. Sclafani responded that his actions in this matter were motivated by his desire to protect his client by not disclosing to his adversary that his client was not providing information with which he could respond to CMC's calls or letters. I accept counsel's statement but admonish Mr. Sclafani that his desire to protect a client is not an excuse to ignore his professional responsibilities to the Court.

chant for the obvious which I will not indulge in.

Moreover, 535 Broadway's contemptuous withholding of discovery has made it impossible for CMC to move this case forward to a resolution by motion or trial. More than a year after this action was commenced by 535 Broadway, CMC still lacks the basic documentation necessary to determine the strength of 535 Broadway's assertions, their susceptibility to dispositive motions or the need for initial depositions. This state of affairs is inherently prejudicial to CMC which has suffered the expense and inconvenience of a lawsuit it has been unable to litigate solely because 535 Broadway has not deemed it necessary or convenient to comply with CMC's requests or this Court's orders.

In this day and age of crowded dockets and limited judicial resources, 535 Broadway's conduct can not be tolerated. 535 Broadway's egregious and vexatious approach to litigation has syphoned-off valuable court time and resources better utilized in the affirmative management and prosecution of other cases. Moreover, it, has usurped access to the court from other litigants. Our courts are open and should always remain open to vindicate wrongs committed against parties. The right to justice, however, requires that parties who seek justice do justice not only by asserting fair claims but by prosecuting those claims in accordance with the rules of procedure required by law. *North American Watch Corp. v. Princess Ermire Jewels*, 786 F.2d 1447, 1451 (9th Cir.1986) ("Last minute tender of documents does not ... restore to other litigants on a crowded docket the opportunity to use the courts."). Plaintiff's willful and repeated non-compliance with these basic principles of our adversarial system of justice requires that this case be dismissed.

## CONCLUSION

535 Broadway's systematic and unilateral disregard for CMC's Discovery Requests and its contempt of this Court's orders has gravely prejudiced CMC's ability appropriately to litigate this case. This grossly negligent and unprofessional conduct is contrary to our system's basic notions of justice and has resulted in unfair costs and delays to the defendant. CMC's motion to dismiss pursuant to Fed.R.Civ.P. 37(b)(2)(C) is granted and the Clerk of the Court is hereby instructed to **DISMISS** this case with **PREJUDICE**. Each party will bear its own costs.

**SO ORDERED.**