**ENVIROPOWER, L.L.C., Appellant,**

v.

**BEAR, STEARNS & CO., INC., Appellee.**

No. 01–04–01111–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 21, 2008.

Kevin D. Jewell, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, for Appellant.

John C. Allen, John C. Allen, P.C., Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

We withdraw our opinion and judgment of May 17, 2007 and issue this one in its stead.

In this action to enforce a New York judgment, EnviroPower, L.L.C., appellant, complains of the trial court's orders denying its motion for new trial, motion to vacate, and motion to stay enforcement of the judgment. In three issues, Enviro-Power contends that (1) it is entitled to a stay of enforcement because the New York judgment against it is subject to modification·on appeal by the New York appellate

1. U.S. CONST. art. IV, § 1.

2. In its third issue and by motion filed pursuant to Texas Rule of Appellate Procedure 24.4, EnviroPower contested the supersedeas bond set by the trial court. TEX.R.APP. P. 24.4.

court, (2) a foreign default judgment based on "death penalty" sanctions is .·"penal" in nature and excepted from enforcement in Texas under the Full Faith and Credit Clause of the United States Constitution,[1] and (3) the trial court erred in ordering it to post a $200,000 supersedeas bond.[2]

In this case of first impression, we affirm.

## Background

Bear, Stearns & Co., Inc., appellee, sued EnviroPower in New York state court for breach of contract and quantum meruit alleging that EnviroPower failed to pay Bear, Stearns for services performed and expenses incurred. The New York court, sua sponte, found that, during discovery, EnviroPower intentionally withheld documents, and it struck EnviroPower's answer. After an evidentiary hearing, the New York court entered a total judgment for Bear, Stearns in the amount of $1,309,880, which included the appropriate interest, costs, and disbursements.

Bear, Stearns domesticated its foreign judgment in the 164th .District Court of Harris County, Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.003, 35.004, 35.005 (Vernon 1997). EnviroPower filed a Motion to Vacate Foreign Judgment, Motion for New Trial, and Motion to Stay Enforcement of Judgment in Response to "Judgment Creditor's Action for Enforcement of Foreign Judgment." After an evidentiary hearing, the trial court denied the motions and ordered EnviroPower to post a supersedeas bond in the amount of $200,000 to provide security for Bear, Stearns during the appeal of the trial

The Court addresses the bond set by the trial court in an opinion on en banc order issued herewith. Justices Taft, Nuchia, and Hanks dissent from the en banc order and opinion on en banc order.

court's order denying its motions to vacate the New York judgment or to stay its enforcement.

## Stay of Enforcement

In issues two and three, EnviroPower argues that it is entitled to a stay of enforcement while the New York judgment against it is subject to modification on appeal by the New York appellate court. After EnviroPower filed its briefing in this case, the New York Court of Appeals, sua sponte, dismissed Enviro-Power's appeal "upon the ground that no substantial constitutional question is directly involved." No further appeal of the judgment is pending in New York. Accordingly, the issue of a stay pending litigation in New York is moot and need not be addressed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.006(a), (b) (Vernon Supp.2007).[3]

## The Enforcement of a Foreign Judgment

In issue one, EnviroPower argues that the trial court erred in denying its motions to vacate and for a new trial because a foreign default judgment based on "death penalty" sanctions is "penal" in nature and excepted from enforcement in Texas under the Full Faith and Credit Clause. We disagree.

## Standard of Review

■■■■ A court's ruling on a motion to vacate, like a ruling on a motion for new trial, is reviewed under the abuse of discretion standard. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (trial court has wide discretion in denying motion for new trial; its action will not be disturbed on appeal ab-

sent showing of abuse of discretion). Although the determination of whether EnviroPower established an exception to full faith and credit generally involves a factual inquiry, not the resolution of a question of law, the trial court has no discretion in applying the law to the established facts. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *Reading & Bates Const. Co. v. Baker Energy Res. Corp.,* 976 S.W.2d 702, 713 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Texas law requires a trial court to give full faith and credit to a foreign judgment of a sister state unless an exception is established. *Walker,* 827 S.W.2d at 840. Therefore, we will review the record to determine whether the trial court misapplied the law to the established facts in concluding that EnviroPower had not established an exception to full faith and credit.

## Full Faith and Credit

■■■■ Under the Full Faith and Credit Clause, a state must give the same force and effect to a judgment of a sister state that it would give to its own judgments. *See* U.S. CONST. art. IV, § 1. When a judgment creditor files an authenticated copy of a foreign judgment, it satisfies its burden to present a prima facie case for enforcement of the judgment. *Reading & Bates Constr. Co.,* 976 S.W.2d at 712. This is true even if the foreign judgment is taken by default. *Cash Register Sales and Servs. of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 280–81 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The burden then shifts to the judgment debtor to prove why the sister state's judgment

---

3. Bear, Stearns argues that, "because the New York Court of Appeals disposed of all issues made the basis of this appeal," the entire appeal before us should likewise be dismissed. However, the New York Court of Appeals' disposition does not affect Enviro-Power's argument in issue one that "death penalty" sanctions are penal and thus not subject to full faith and credit. We address this issue below.

should not be given full faith and credit. *Id.*

To overcome this burden, the judgment debtor must collaterally attack the foreign judgment by establishing one of the following recognized exceptions to the mandates of the Full Faith and Credit Clause: (1) the judgment is interlocutory, (2) the judgment is subject to modification under the law of the rendering state, (3) the rendering state lacked jurisdiction, (4) the judgment was procured by fraud or is penal in nature, or (5) limitations has expired under Texas Civil Practice and Remedies Code section 16.066. *See Russo v. Dear,* 105 S.W.3d 43, 46 (Tex.App.-Dallas 2003, pet. denied); *Reading & Bates Constr.,* 976 S.W.2d at 712; *see also* Tex. Civ. Prac. & Rem.Code Ann. 16.066 (Vernon 1997). The judgment debtor may overcome the presumption of the validity of the foreign judgment only with clear and convincing evidence. *Russo,* 105 S.W.3d. at 46. In a collateral attack, no defense that goes to the merits of the original controversy shall be recognized. *Id.*

In this case, when it filed an authenticated copy of the New York judgment, Bear, Stearns presented a prima facie case for its enforcement in Texas. The burden then shifted to EnviroPower to prove by clear and convincing evidence why it should not be given full faith and credit.

## Penal in Nature

EnviroPower argues that, because they are penal in nature, death penalty sanctions are not enforceable in a foreign jurisdiction. We find the United States Supreme Court's opinion in *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) to be instructive when considering the penal classification of death penalty sanctions. *Huntington* defines the limits of penal statutes not enti-

tled to sister state enforcement. The Supreme Court held,

> The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act.

146 U.S. at 674, 13 S.Ct. at 230; *Williams v. State of Washington,* 581 S.W.2d 494, 495 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). In *Huntington,* the Supreme Court instructed that, in making this determination, we should also consider whether the wrong to be discouraged by the statute is a wrong to the public or a wrong to the individual. The Supreme Court explained,

> The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: "Wrongs are divisible into two sorts of species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed 'civil injuries'; the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are distinguished by the harsher appellation of 'crimes and misdemeanors.'"

*Huntington,* 146 U.S. at 668–69, 13 S.Ct. at 228 (quoting 3 Bl. Com. 2). The Supreme Court went on to say that criminal or quasi-criminal statutes are the only types of penal statutes that fall under the

exception to the Full Faith and Credit Clause. It is in this context that the "death penalty" sanctions must be evaluated. The central consideration is whether the judgment relates to punishment for, or deterrence of, a wrong against the state or society, as opposed to a wrong exclusively against the opposing party to the litigation.

■■■■ Death penalty sanctions serve as a remedy for parties harmed by another party's wrongful actions during litigation. We agree with the Supreme Court, which, in 1892, warned that "there is danger of being misled by the different shapes of meaning allowed to the word 'penal' in our language," but that it is possible to distinguish, on the one hand, sanctions which adjudicate private rights and also deter future abuses, and on the other, crimes against the public. *Huntington*, 146 U.S. at 666, 13 S.Ct. at 227. As such, death penalty sanctions are designed, under the court's rules of procedure, as punishment for the litigant and deterrence of future wrongs and not as punishment for a breach of public duties. *See id.* at 668–69, 13 S.Ct. at 228. Texas courts have long recognized that discovery sanctions—particularly the rendition of a default judgment following the striking of pleadings—are designed to punish the alleged wrongdoer as well as to deter parties from abusing discovery procedures during litigation. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991) (legitimate purpose of sanctions are "punishment and deterrence"); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985) (purpose of sanction is to "deter"). Rule 37 of the Federal Rules of Civil Procedure also permits the striking of pleadings and other sanctions resulting from civil discovery violations.

In *535 Broadway Associates v. Commercial Corporation of America*, 159 B.R. 403 (S.D.N.Y.1993), the court held,

> Sanctions imposed under Rule 37 have the immediate effect of insuring compliance with court orders in the particular case. The Rule also serves to "penalize those whose conduct . . . warrant such a sanction," by ensuring that the recalcitrant party will not enjoy the fruits of its own non-compliance. Finally, the Rule has the statutory effect of "deter(ing) those who might be tempted to such conduct in the absence of such a deterrent."

*Id.* at 406–07 (internal citations omitted). "Rule 37 Sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)). Thus, while death penalty sanctions serve a public purpose of deterrence, they are not, therefore, "penal" in nature because they do not punish "a breach and violation of public rights and duties." *Huntington*, 146 U.S. at 668–69, 13 S.Ct. at 228.

■■■■ Accordingly, we conclude that death penalty sanctions are not excepted from enforcement in Texas under the Full Faith and Credit Clause, and we hold that the trial court did not misapply the law to the facts in concluding that EnviroPower had not established an exception to full faith and credit.[4]

We overrule issue one.

---

4. EnviroPower also argues that, because the New York judgment was not rendered on the merits but as the result of death penalty sanc-

tions, enforcement of the judgment in Texas would not advance the purpose of the Full Faith and Credit Clause-to preserve and per-

## Conclusion

We affirm the trial court's judgment.

mit enforcement of a sister state's legal adjudication of the merits of a dispute. However, contrary to EnviroPower's arguments, judgments not rendered on the merits are entitled to full faith and credit. *See, e.g., Cash Register Sales Servs. of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 280–81 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that default judgment was subject to full faith and credit enforcement in Texas). Furthermore, this argument is not a recognized exception to the mandates of the Full Faith and Credit Clause.