**Affirmed and Memorandum Opinion filed January 15, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-01044-CV

_____

## SONDRA JACKSON, Appellant

## V.

## ERIK DEAN, Appellee

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 13-DCV-208784**

## M E M O R A N D U M   O P I N I O N

Appellant Sondra Jackson sought to domesticate a judgment she had obtained against appellee Erik Dean in Alabama. Dean successfully moved to vacate the judgment on the basis that the Alabama court lacked personal jurisdiction over him. On appeal, Jackson contends that the trial court erred because the evidence established that Dean had sufficient contacts with Alabama to support the Alabama court's exercise of jurisdiction over him. We affirm.

## FACTUAL BACKGROUND

In 2007, Sondra Jackson, an Alabama resident, contracted with Infinity Hospitality Group, LLC, a Texas company, as an independent marketing representative in the hospitality industry. Dean, a Texas resident living in Fort Bend County, was Infinity's president. Jackson sold Infinity's products in a marketing area that included Alabama, Mississippi, Louisiana, and western Tennessee.

In 2011, Jackson sued Infinity, Dean, and another Infinity representative, Chris Coursen, a New Jersey resident, in the Circuit Court of Mobile, Alabama. Jackson asserted a breach of contract claim against Infinity and numerous claims against all defendants, including fraud and conspiracy. In her petition, Jackson alleged that Dean and Coursen misrepresented to her that she would be given an exclusive marketing area and that they failed to pay her commissions totaling more than $32,000.

The Alabama circuit court entered a default judgment in favor of Jackson and, on April 20, 2012, signed a judgment against Dean for roughly $115,000 in damages and prejudgment interest accrued. The judgment reflected that no action was being taken as to Infinity "as the case against them has been stayed by Ms. Jackson due to bankruptcy proceedings."

Jackson sought to domesticate the Alabama judgment in Texas by filing a Foreign Judgment Authentication with a certified copy of the Alabama judgment in the Fort Bend County district court. Dean moved to vacate the judgment on the sole ground that the Alabama court lacked personal jurisdiction over him. Dean argued that he did not purposely establish minimum contacts with Alabama such that he could reasonably anticipate being sued there, and the exercise of personal jurisdiction would not comport with fair play and substantial justice.

Dean supported his motion with an affidavit in which he stated that Infinity was formed as a Texas limited liability company in 2004. A company of Dean's was one of the members of Infinity. Dean explained that Infinity had offices in Houston, New Jersey, and Nevada, and it "had a network of marketers in various areas of the country" who marketed Infinity's products. He stated that Jackson "had a marketing contract for parts of the Southeastern United States." Dean also stated that Jackson's contract was negotiated by Coursen "out of Infinity's New Jersey office." According to Dean, "Coursen was the primary Infinity contact with all of Infinity's marketers." Dean averred that the contract "was solely between Infinity and [Jackson]" and Dean "was not a party to the contract."

Dean explained that Jackson was not paid her commissions because Infinity began losing money and filed for bankruptcy. Dean denied conspiring with Coursen to commit fraud, and stated that even if they had done so, any conspiracy or fraud would have taken place either in New Jersey or Texas, not in Alabama. Dean also stated:

> "My personal contacts with Plaintiff were limited. In my dealings with her, I acted solely as a representative of one of the managers of Infinity. I did meet her from time to time at trade shows in New York and Chicago, not Alabama. We had maybe a total of three dozen phone calls over the years she had a relationship with Infinity. In each case, we talked on pending Infinity business. I was either in Texas or elsewhere (never in Alabama) when we talked.

Dean denied ever personally conducting business in Alabama, owning any property in Alabama, or having any interest in any businesses in Alabama. He also stated that he had only been to Alabama twice, and both times he was driving from Texas to Florida while on family vacations.

In response to Dean's motion to vacate, Jackson argued that her judgment was entitled to full faith and credit, and that Dean could not meet his burden to

3

avoid the judgment. Jackson supported her response with her own affidavit, in which she averred that Dean "repeatedly made untrue representations to [Jackson] in Alabama that were false." She stated that "Erik Dean and his company" entered into a business relationship with her to sell their products in Alabama and that she was paid in Alabama "by Erik Dean and his company for three years." Also, Jackson averred that "Erik Dean entered into a contractual relationship and personally made false statements via email" to her in Alabama.

Along with the affidavit, Jackson attached to her response an exhibit consisting of several business-related emails reflecting communications between her and Infinity personnel or third parties. Although some were from Jackson to Dean, and Dean was copied on others, only one was from Dean to Jackson. That email, sent in 2007, reflected that Dean had met Jackson in New York and was discussing hiring her. Dean requested Jackson's address and asked Jackson to identify the territories she reached so that he could draw up a letter agreement with her. The email reflected that it was sent by Dean as president of Infinity.

In her response, Jackson sought to discredit Dean's statement in his affidavit that he did not seek the benefit of any business opportunity in Alabama, pointing to her affidavit as evidence that Dean hired and paid Jackson to market Infinity's products. Jackson asserted that, through his actions on behalf of Infinity, Dean sought to "caus[e] Sondra Jackson to act and bring in revenue for Infinity Hospitality from which he would personally gain as an owner/member of the company." Jackson argued that these actions "justif[y] a personal action for fraud against Mr. Dean because he acted for his own personal gain." Thus, she maintained, Dean was subject to jurisdiction in Alabama based on his activities of engaging Jackson to sell Infinity's products, his contacts over a three year period, and his making payments to Jackson in Alabama.

At the hearing on Dean's motion, Dean appeared and testified. Jackson did not appear, but Jackson's counsel offered as evidence Dean's affidavit and the business-related emails, which were admitted without objection. Dean offered a copy of Jackson's Alabama petition, which was also admitted.

Dean's testimony at the hearing reflected many of the same facts contained in his affidavit, along with some additional testimony. Dean stated that Infinity was a Texas limited liability company that had offices in Houston, Texas, as well as Paramus, New Jersey and Las Vegas, Nevada. Dean and Coursen were the members of the company, and Dean was its president. Dean testified that the company was purposely formed to insulate its members from personal liability. Dean also testified that Jackson was an independent manufacturer's representative whose agreement was with Infinity. Dean denied contracting individually with anyone in Alabama. Although Dean stated that Coursen primarily interacted with Infinity's representatives, Dean acknowledged that he occasionally talked to Jackson, estimating eight to ten times per year, and he saw her at trade shows. Dean also testified that in all of his dealings with Jackson, he was acting on behalf of Infinity.

At the conclusion of the hearing, the district court granted Dean's motion to vacate. This appeal followed.

## ANALYSIS OF JACKSON'S ISSUE

In one issue, Jackson contends that the trial court erred in granting Dean's motion to vacate her Alabama judgment because the evidence establishes that the Alabama court properly asserted personal jurisdiction over Dean based on his contacts in that state. Jackson primarily relies on Dean's affidavit and hearing testimony, in which Dean acknowledged that he communicated with Jackson by telephone, fax, and email; he knew that Jackson was in Alabama; and he

5

communicated with Jackson for the purpose of having her sell products to generate income "for [him] and his company."

Dean has not filed an appellate brief. Below, Dean argued that he could not be held individually liable for the company's debts; Jackson failed to allege that he committed any tortious acts in Alabama; and the mere fact that the effects of tortious conduct committed out of state are felt in a particular state is an insufficient basis for that state's exercise of personal jurisdiction over a nonresident defendant.

## A.    The Applicable Law and Standard of Review

Jackson sought to domesticate her Alabama judgment under the Uniform Enforcement of Foreign Judgments Act (UEFJA). *See* Tex. Civ. Prac. & Rem. Code §§ 35.001–.008. When a judgment creditor files an authenticated copy of a foreign judgment under the UEFJA, the judgment creditor satisfies its burden to present a prima facie case for its enforcement. *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 61 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 16, 19 (Tex. App.—Houston [1st Dist.] 2008, no pet); *see* Tex. Civ. Prac. & Rem. Code § 35.003. The burden then shifts to the judgment debtor to prove by clear and convincing evidence why the sister state's judgment should not be given full faith and credit as the United States Constitution requires. *Peters*, 396 S.W.3d at 61; *EnviroPower*, 265 S.W.3d at 19–20. A complaint that the sister state's court lacked personal jurisdiction over the judgment debtor is a recognized defense to enforcement. *See Peters*, 396 S.W.3d at 61; *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 713 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

We review a trial court's order vacating a foreign judgment for an abuse of discretion. *Peters*, 396 S.W.3d at 61. Although resolving whether a judgment

debtor has established an exception to full faith and credit generally involves a factual inquiry, whether a court has jurisdiction over a defendant is a question of law. *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 486 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *see Michiana Easy Livin' Country, Inc., v. Holten*, 168 S.W.3d 777, 790–91 (Tex. 2005) ("Personal jurisdiction is a question of law for the court, even if it requires resolving questions of fact."). The trial court has no discretion in applying the law to the established facts. *Mindis Metals, Inc.*, 132 S.W.3d at 486. Therefore, we review the record to determine whether the trial court misapplied the law to the established facts by concluding that Dean established that the Alabama court lacked personal jurisdiction to render judgment against him. *See id.* at 486.

Alabama's long-arm statute, like that of Texas, extends the personal jurisdiction of the Alabama courts to the limits of due process under the federal and state constitutions. *See* Ala. R. Civ. P. 4.2(a), (b); *Sieber v. Campbell*, 810 So.2d 641, 644 (Ala. 2001); *see also* Tex. Civ. Prac. & Rem. Code §§ 17.041–.045; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657–58 (Tex. 2010). The nonresident

7

defendant's minimum contacts may give rise to either specific or general jurisdiction. *Burger King*, 471 U.S. at 472–73 n.15 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)).

Here, Jackson argues only that Dean's contacts give rise to specific jurisdiction. Specific jurisdiction exists if a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* at 472–73. Stated another way, specific jurisdiction depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations., S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011)).

The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. *Id.* at 1121 (internal quotation marks and citations omitted); *Calder v. Jones*, 465 U.S. 783, 783 (1984). For a state to exercise jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection" with the forum state. *Walden*, 134 S. Ct. at 1121. The relationship must arise out of contacts that the defendant himself creates with the forum state, not the unilateral activities of the plaintiff or other persons. *Id.* at 1122; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Due process requires that a defendant be haled into court in a forum state based on his own affiliation with the state, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the state. *Walden*, 134 S. Ct. at 1123; *Burger King*, 471 U.S. at 475.

Thus, a forum state's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the

necessary contacts with the forum. *Walden*, 134 S. Ct. at 1123. Mere injury to the forum resident is not a sufficient connection to the forum. *Id.* at 1125. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*; *see Kelly*, 301 S.W.3d at 661 (holding that court of appeals erred by allowing fraud claim to proceed against nonresident company's officers when plaintiffs offered no allegations or evidence that any part of their claim originated from the officers' conduct in the forum); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (declining to recognize the assertion of specific jurisdiction over a nonresident defendant based solely on the effects or consequences of an alleged conspiracy with a resident of the forum).

### B. The Alabama Court Lacked Personal Jurisdiction over Dean

In her petition before the Alabama court, Jackson alleged that Dean and Coursen "acted as officers, agents, and/or representatives of Infinity" when dealing with her and that jurisdiction over Dean and Coursen was appropriate in Alabama because they "conspired . . . to commit fraud and injure an Alabama resident with prior knowledge." To support her tort claims, Jackson alleged that Dean and Coursen conspired to cause her injury by making false representations to her concerning her marketing area and her commissions. Jackson's petition does not allege that Dean engaged in any tortious conduct in Alabama.

Both below and on appeal, Jackson relies on Dean's business-related communications with her by phone, fax, and email over a three-year period. Specifically, Jackson points to Dean's acknowledgement in his affidavit that he had "maybe had a total of three dozen phone calls over the years [Jackson] had a relationship with Infinity." Jackson also points to testimony that she contends shows that Dean had "consistent and continuous contacts" with her which

established a business relationship with her in Alabama "from which the suit derived":

> Q    [Jackson's counsel:] You personally communicated with her during the course of the contract?
>
> A    [Dean:] Occasionally.
>
> Q    By telephone?
>
> A    Sometimes.
>
> Q    By e-mail?
>
> A    Correct.
>
> Q    By faxes sometimes?
>
> A    Probably.

Additionally, Jackson points to Dean's testimony to demonstrate that Dean engaged in business on behalf of himself and his company and that he purposefully directed his activities at the forum state:

> Q    [Jackson's counsel:] But you wanted her to engage in business on behalf of you and your company in Alabama, correct?
>
> A     [Dean:] Correct.
>
> Q    During the course of your relationship with her, when you sent her e-mails from your e-mail account, you were expecting her to engage in business on behalf of you and the company in Alabama when you did that, right?
>
> . . .
>
> A    Yeah, we communicated on possible jobs and projects and customers.
>
> Q    Right. And things you wanted her to do in Alabama, correct?
>
> A    Correct.
>
> Q    And you wanted her to sell in order to generate income for you and your company, correct?
>
> A    Correct.

. . .

Q      And in the course of . . . some of those communications, promises of payment turned out not to be true because of the bankruptcy, correct?

A      Correct.

. . .

Q      Okay. And your position is that you didn't have to pay her because the company filed bankruptcy, correct?

A      We couldn't, correct.

Q      You personally could, but you didn't, correct?

A      I couldn't, actually.

Q      All right. Did you not pay her because a bankruptcy was filed personally?

A      I mean, I couldn't personally pay it.

Q      All right. In all of your interactions by telephone, fax, email, you knew that Ms. Jackson was in Alabama, correct?

A      Correct.

Q      You expected her to work for you and your company in Alabama during - - during this period, correct?

A      Correct.

Q      And your communications with her in those different ways was to encourage her to do business for you in Alabama, correct?

A      Correct.

Jackson asserts that Dean's admissions of phone calls and other communications form the basis for the fraud and other allegations against him. Jackson argues that the evidence establishes "direct, consistent[,] and repetitive intentional contacts" which amount to purposeful availment by Dean of the privilege of conducting business in the state of Alabama, because he "benefited from customers and sales from the State of Alabama through [Jackson]." Further, Jackson contends this evidence justifies a personal action against Dean for fraud because he acted for his

own personal gain.

An individual's contract with an out-of-state party, without more, cannot establish sufficient minimum contacts in the other party's home forum. *Burger King*, 471 U.S. at 478. Similarly, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Cerbone v. Farb*, 225 S.W.3d 764, 769 (Tex. App.—Houston [14th Dist.] 2007, no pet.). However, a corporate officer is not protected from specific jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable. *Cerbone*, 225 S.W.3d at 769. To support specific jurisdiction over a corporation's officers for alleged wrongdoing, a plaintiff must plead, and when challenged by the defendant, present evidence that the officer's relevant acts occurred, at least in part, in the forum state. *See Walden*, 134 S. Ct. at 1121; *Kelly*, 301 S.W.3d at 660–61; *see also Int'l Shoe*, 326 U.S. at 319 (noting that the due process clause does not contemplate that a state may make a binding judgment against an individual lacking "contacts, ties, or relations" with the state).

Although Jackson attempts to blur the distinction between Dean's acts as an individual and the acts of the company he represented, Jackson's petition alleged that, since 2007, Dean acted as an officer, agent, or representative of Infinity when dealing with her. Jackson argues that Dean's contacts on behalf of Infinity justify a personal action against him for fraud because he stood to gain personally as an owner or member of the company; but, assuming Jackson sufficiently alleged fraud and conspiracy claims against Dean individually under Alabama law, "the mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns." *Kelly*, 301 S.W.3d at 660; *see also Shaffer v. Heitner*, 433 U.S.

12

186, 215 (1977) ("[W]e have rejected the argument that if a State's law can properly be applied to a dispute, its courts necessarily have jurisdiction over the parties to that dispute."). Instead, we must look to Dean's intentional conduct related to the suit to determine whether it creates a "substantial connection" with the forum state and the operative facts of the litigation. *See Walden*, 134 S. Ct. at 1121; *Burger King*, 471 U.S. at 475; *Kelly*, 301 S.W.3d at 657–58.

In support of his motion to vacate, Dean presented undisputed evidence that he was a Texas resident and president of Infinity, a Texas limited liability company. Dean denied having any interest in any business in Alabama, or personally conducting business in Alabama with Jackson or anyone else. Dean also testified that he had only been to Alabama twice, when driving through the state while on family vacations. Dean testified that Infinity contracted with Jackson to market its products in several states, including Alabama, and that Coursen, the primary contact for Infinity's marketers, negotiated Jackson's contract. Dean also testified that his contacts with Jackson were limited, consisting of occasional communications by phone, email, and fax concerning Infinity's business. Dean denied meeting with Jackson in Alabama.

Jackson averred generally that she had a contractual relationship with Dean and that Dean paid her commissions in Alabama, but Dean testified that her contract was with Infinity and that he was not a party to the contract. Dean also testified that Infinity was formed as a limited liability company for the purpose of protecting its members from personal liability, and that all of his contacts with Jackson in Alabama were on behalf of Infinity. Additionally, the 2007 email from Dean to Jackson, on which Jackson relies for the proposition that Dean hired her, reflects that it was sent by Dean in his capacity as president of Infinity.[1] The trial

---

[1] Further, Dean's 2007 email reveals that Dean hired Jackson after meeting her in New

13

court reasonably could have resolved any conflicts in the evidence to form a firm belief or conviction that Dean did not individually contract with Jackson and that, at all times, Dean was acting on behalf of Infinity on those occasions he communicated with her.

Jackson's remaining evidence shows that Infinity contracted with her to work as an independent marketing representative in an area that included Alabama and several other states. Over the next three years, Dean, as Infinity's president, periodically communicated with Jackson concerning Infinity's business either from Texas or elsewhere by phone, email, and fax directed to Jackson in Alabama. Significantly, Jackson did not allege or present any evidence that Dean engaged in any tortious conduct in Alabama. *See Kelly*, 301 S.W.3d at 660–61. Although Jackson also asserted that she relied on false statements made by Dean that injured her in Alabama, mere injury to the forum resident is not a sufficient connection to the forum. *Walden*, 134 S. Ct. at 1125; *Kelly*, 301 S.W.3d at 661.

On this record, we conclude that Dean did not purposely avail himself of the privilege of conducting activities in his personal capacity in Alabama and that no substantial connection existed between Dean's occasional, business-related contacts with Jackson on behalf of Infinity and Jackson's tort claims. *See Walden*, 134 S. Ct at 1121–23; *Burger King*, 471 U.S. at 475; *Kelly*, 301 S.W.3d at 661; *Nat'l Indus. Sand Ass'n*, 897 S.W.2d at 773–74. Because Dean demonstrated that he did not have sufficient minimum contacts with the State of Alabama to permit the court in that forum to exercise jurisdiction over him, Dean met his burden to prove by clear and convincing evidence that full faith and credit should not be

---

York, and there is no allegation or evidence that Dean purposely recruited Jackson because she resided in Alabama.

afforded to the Alabama judgment. We hold that the trial court did not abuse its discretion by granting Dean's motion to vacate.

## CONCLUSION

We overrule Jackson's issue and affirm the trial court's judgment.


/s/    Ken Wise
        Justice


Panel consists of Justices McCally, Brown, and Wise.

15